John W. Gugliucci et al  
vs  
Estelle M. Soriero et als  } Eq. No. 3964

September 21, 1917

BARROWS, J. Heard on bill, answer and oral testimony on issues of fact.

The bill seeks to enjoin the foreclosure of a mortgage for $2,100 and asks for an accounting of payments on the same.

The giving of the mortgage and a note is admitted. Complainants claim to have paid $533.33 on account of the principal to one of the beneficial owners of the note, Emerigo Soriero, with the knowledge and consent of Henry D. C. Dubois, the payee of the note, who was acting as attorney for Estelle, Angalina and Emerigo Soriero. This payment is denied. Complainants also claim that the note now produced, marked Respondents' Exhibit B, is not the original note and that the signatures to Exhibit B are forged as well as a provision in said note calling for the payment of $500 on the principal November 1, 1916. Gugliucci's testimony relating to the payment of $500 is somewhat confused, due perhaps to confusion in the deal in which the mortgage was given. We are not entirely clear what Gugliucci's testimony means but we understand he does not admit that he owed $500 on the mortgage November 1st. He leaves us in doubt whether he claims that the $500 which he paid to Mr. Dubois on May 25th had any relation to the mortgage. At one time he says it was a "hold up." He says that he was asked to pay $500 to Thomas Soriero, the husband of Estelle, on November 1st, but that the payment was not related to the mortgage. We are satisfied that the payment of $500 to be made on November 1st was on account of the mortgage, otherwise the claim of $533.33 having been paid to Emeri-

becomes meaningless. We therefore must discredit Gugliucci's claim that the only money owed by him on the mortgage November 1st was the in-

2

terest in advance and that the payment which he was asked by Thomas Soriero to make of $500 was a favor. See Gugliucci's letter of October 7th, marked Respondents' Exhibit F, testimony of Constantino of Gugliucci's admissions, and the testimony of Mr. Dubois as to the giving of the original note and its terms.

On the facts relating to payment of $533.33, Gugliucci's testimony we do not feel to be reliable. We have to choose between his story supported by his wife, and the testimony of Mr. Dubois and Emerigo. Not alone the appearance of the witnesses, but the substance of their stories, leaves us no doubt that the latter were telling the truth and the former were not. We have read the testimony given before Mr. Justice Tanner and carefully studied the note and mortgage under a magnifying glass with a view to ascertaining whether the signatures are forgeries. We do not believe they were traced from the mortgage signatures. We fail to find numerous indentations and erasures. We do not find lifelessness as testified to by Mr. Clark. We find no retouchings which are characteristics of tracings. Some of the criticisms made by Mr. Clarke and Mr. Miller, such as uniformity of pen pressure, are undoubtedly true, but an original signature made with a stylographic or similar pen would not show shading. Superimposing the note upon the mortgage signatures under a strong glass and against the light seems to us to negative the claim of tracing, as well as to show the strength of the signatures. All experts are agreed that the same typewriter wrote both note and mortgage. The originals were prepared in Mr. Dubois' office and were out of his office for about three

days. The alleged forgery is not suggested to have been done in Mr. Dubois' office and it is not suggested that any chance was had to use his typewriter. It would be most remarkable to get a typewriter precisely similar in alignment and other features for use in writing the forged note. See the slight displacement in the alignment of the letter U.

The reason for Gugliucci's claim of a forged note becomes apparent when we find him claiming to have made a cash payment of $533.33 to Emerigo on August 28 in advance of its being due November 1st, and with the consent of Mr. Dubois. Gugliucci has been a real estate dealer for ten years. He has no receipt, no voucher, and no proof of payment of any sort except his own and his wife's contracted word. Production of his wife's check to himself for $400 on August 4th proves nothing. The evidence of all parties shows that Guliucci paid interest to Emerigo Soriero on August 28 for six months in advance of November 1st on the sum of $533.33, a most remarkable proceeding when he was preparing to pay the entire principal on November 1st, and later in the same day claims to have paid a portion of said principal, to wit: $533.33, to Emerigo. (See testimony of Gugliucci before Tanner, J., page 12.) His story of a forged note in place of the original containing an endorsement of this payment of $533.33 is his only way to support his claim in the face of the documentary evidence. We believe his experts are mistaken as to the forged signatures and we do not believe his story, or that of his wife, that Emerigo received the money and endorsed the payment in their presence, later substituting Exhibit B for the original note and adding the clause about payment of $500 on November 1st. We do not believe that there has been any substitution of a forged note for the original. We find that Respondents' Exhibit B is the original and contained a clause for the payment of $500 on November 1st, and that Gugliucci did not pay $533.33 to Emerigo and never made such claim to Dubois or had his consent to make such payment. We find that Gugliucci is in default according to the terms of said note and that the only payments he has ever made are $63 interest at the time the note was given and $15 interest accepted in lieu of $16 by Emerigo Soriero and with Dubois' consent on August 28, 1916.

The bill should be dismissed with costs to the respondents.

For complainants: Easton, Williams & Rosenfeld.

For respondents: Dubois & Dubois, J. F. Conaty and E. R. Walsh.